GIVEN v. THE CITY OF DES MOINES ET AL.

1. **Cities and Towns**: GRADING STREETS FROM DATUM LINE. Where a city ordinance provided that all street grades should be calculated from the *datum* line to the *middle* of the streets, *held* that it was a violation of the ordinance to take the outer line of the street for the grade line, and that the city was properly required, on the complaint of an adjacent lot-owner, to conform the grade to the ordinance.

2. ------: GRADE OF RAILROAD ON STREET: HOW DETERMINED. Where a railroad company was by ordinance allowed to raise the grade of a street used for its track to a certain height, *held* that it could not be

allowed to so construct its road on the street that its track should be above the named grade, on the ground that in the construction of railroads the grade line of the road is the surface of the earth on which the ties are laid.

3. ———: RIGHT OF PROPERTY OWNERS AS TO GRADING OF STREETS. Where the natural surface of the street is above or below the established grade, abutting property owners cannot require the city to bring it to grade; but they can require the city, when it changes the surface of the street, to observe the established grade, or pay damages occasioned by a change of grade.

4. ———: ———: RAILROAD ON STREET. Where a railroad track is even with the surface of an ungraded street, an abutting property owner cannot require the company to bring its track to the established grade until the city has brought the street to that grade.

*Appeal from Polk Circuit Court.*

THURSDAY, APRIL 22, 1886.

THIS is an action in equity, by which the plaintiff seeks to to compel the defendants to change the surface of Second, Third and Vine streets, in the city of Des Moines, to correspond with the established grade of said streets, or to recover damages for the alleged unlawful improvement of said streets in a manner not authorized by the established grade. Plaintiff is the owner of certain lots abutting on said streets, and she claims that the value of her lots is materially affected by the alleged wrongs of which she complains. The court below decreed that the city should raise the surface of Second and Third streets, opposite plaintiff's property, nine inches, and that, when the city should reduce the surface of Vine street to the grade authorized by an ordinance of the city, the railroad company should lower its railroad tracks to correspond with the actual grade thus made; and it was further decreed that, in case the city should elect to maintain the surface of Second and Third streets as they now are, it should pay to the plaintiff $5,000 as damages to her property. All of the parties appeal.

*Phillips & Day,* for plaintiff.

*Wright, Cummins & Wright,* for Chicago, R. I. & P. R'y Co.

*Marcus Kavanagh, Jr.,* and *W. W. Williamson,* for the City.

ROTHROCK, J.—A hotel was erected on one of the plaintiff's lots in the year 1868. The building fronts on Vine and Third streets. On the other lot a machine and plow shop, fronting on Vine and Second streets, was erected in 1872. The buildings are substantial brick structures, three stories in height. In the year 1864 the city of Des Moines adopted an ordinance establishing the grades of the various streets of the city, among which was Vine street at its intersection with Second and Third streets. In the year 1867 the Chicago, Rock Island and Pacific Railroad Company was authorized by an ordinance of the city to lay its railroad track and side tracks along and upon Vine street, at a special grade fixed by the ordinance. This special grade was higher at Second street than the grade which had been established by the general grade ordinance. The evidence shows quite satisfactorily that the railway tracks in Vine street are maintained three and one-half inches at Second street, and eight and one-half inches at Third street, above the special grade line authorized and established by the city for the benefit of the railroad company; but it also appears that the city has not graded Vine street between Second and Third streets, and the railroad tracks are not now above the actual level of Vine street. The city paved Second and Third streets in the year 1883. When the work was completed, the crown of the pavement in the center of the streets was nine inches below the grade line as established by the general ordinance. The plaintiff does not claim that the city or the railroad company can be

2. CITIES and towns: grading streets from datum line.

compelled to pay damages, or to change the grade established for Vine street by the special ordinance. It is conceded that, at the time the special ordinance was enacted and the plaintiff's buildings were erected, a railroad company had the right to occupy the streets of a city for the construction of its road, subject to the equitable control and police regulations of the city; and we do not understand that it is claimed by the railroad company that the city did not have the power to prescribe the grade of the railroad tracks.

The plaintiff insists that the city shall be required to conform to the general grade on Second and Third streets, or pay her the damages she has sustained by reason of the change made from the established grade when the streets were paved. It is further claimed that the railroad company should be required to lower its tracks to the grade line established by the special ordinance. The city insists that the claim of the plaintiff, so far as the grade of Second and Third streets is involved, is unfounded, because the surface of the streets is not lower than the grade established by ordinance. This question requires an examination of section 3 of the ordinance. It is as follows: "All grades established by this ordinance, or that may be hereafter established, shall be calculated from the *datum* line established by section one of this ordinance, and shall be calculated for the middle of the several streets on which they are established."

It appears from the evidence that, in improving the streets to the grade established by the ordinance, the city has uniformly taken the outer line of the streets as the grade line. It appears to us that this is in violation of the ordinance. It plainly means that the grade line shall be ascertained by or "calculated for the middle of the several streets," and from no other point. This is to be ascertained by taking the elevation given in the ordinance from the *datum* line to the center or middle of the street at the point named. It appears to us that discussion upon this question is unnecessary. Any other construction of the ordinance would render

it impossible to ascertain the plane upon which the street, when improved, should be placed. We think that the court correctly found that Second and Third streets, opposite plaintiff's property, are nine inches below grade, and that they should be brought up to the established grade line.

It is claimed by counsel for the railroad company that its tracks are not above the special grade line. They insist that the grade line of a railroad is the surface of the earth-work upon which the ties are laid. The evidence shows that counsel are correct when reference is had to the line of a railroad. But the ordinance in question was not a contract to build a railroad; nor was it a question with the city council, when the ordinance was enacted, how much higher the top of the iron rails would be than the surface of the earth-work. The ordinance provided for a change in the grade of certain *streets;* that is, that the railroad company should be allowed to raise the grade of the streets to a certain height, calculated from the *datum* line. It was wholly immaterial whether the change in the grade of the streets be made of earth or wood or iron. It was the surface of the streets that was in contemplation, and not technical definitions of what is the grade of a railroad, as distinguished from its superstructure. We think the court correctly found that the railroad tracks were above the line fixed by the special ordinance, and that no good reason is shown why they should be maintained as they are when the city shall bring the streets to the established grade.

The plaintiff appeals because the railroad company was not required by the decree to lower its tracks on Vine street to the grade line established by the special ordinance. It appears from the evidence and the finding of the court that the city has not graded Vine street to either of the established grades, and that the railroad tracks are not above the actual level of the street. Where the natural surface of a street is above or below the

established grade line, abutting property owners cannot require the city to excavate or fill up the street to grade. They can require the city, when it changes the surface of a street, to observe the grade lines, or pay damages occasioned by a change of grade. In the case at bar the plaintiff has no right to require the city to excavate Vine street outside of the railroad tracks, and, as long as it remains as it is, the

**4. ——: ——: railroad on street.** railroad company should not be required to lower its tracks below the surface of that part of the street not used for railroad tracks. It is apparent that to do so would benefit no one. In our opinion, the court below correctly held that, until the city shall undertake to improve Vine street, the plaintiff has no reason to complain because the railroad tracks, as well as the whole surface of the street, is above grade.

We think the decree should be affirmed, and that each of the parties should pay his own costs.

AFFIRMED.