[No. D032454. Fourth Dist., Div. One. June 21, 2000.]

ANTHONY E. DIMOCK, Plaintiff and Appellant, v.
EMERALD PROPERTIES LLC et al., Defendants and Respondents.

**COUNSEL**

Philip H. Dyson for Plaintiff and Appellant.

Cameron & Dreyfuss and Lawrence J. Dreyfuss for Defendants and Respondents T.D. Service Company and Commonwealth Trust Deed Services, Inc.

Roup & Loomis, Ronald D. Roup and Joan C. Spaeder-Younkin for Defendants and Respondents Lawrence Baber, Cecilia Baber, Robert Shawcroft and April Shawcroft.

Kimball, Tirey & St. John and Mark A. Brody for Defendant and Respondent Emerald Properties LLC.

Suppa, Trucchi & Lee, Jerry Michael Suppa and Marjan Mortazavi for Defendants and Respondents Temple Inland Mortgage Corporation, Calmco Trustee Services, Inc., and Bankers Trust Company.

## OPINION

**BENKE, Acting P. J.**—By statute the Legislature has permitted the beneficiary of a deed of trust to substitute, at any time, a new trustee for the existing trustee. Under the governing statute the substitution is made by simply recording a document evidencing the substitution. (Civ. Code,[1] § 2934a, subd. (a).) By its terms the statute provides that after such a substitution has been recorded, "the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust." (§ 2934a, subd. (a)(4).)

Other than by recording a further substitution there are no other statutory means by which the effect of a substitution, once recorded, may be avoided. Moreover, notwithstanding the arguments of respondents, we are not disposed to create any nonstatutory means of doing so on the record presented here.

Because the respondent beneficiary in this case recorded a substitution of trustee, thereafter only the substituted trustee had the power to sell the trustor's property at a foreclosure sale. Thus a later sale by the prior trustee was void. Accordingly we must reverse a judgment entered in favor of the respondents and direct that a judgment be entered quieting title in favor of plaintiff and appellant, the trustor under the deed of trust.

### FACTUAL BACKGROUND

At all pertinent times, plaintiff and appellant Anthony E. Dimock owned a home in San Diego. In 1993 he borrowed $80,000 and gave a deed of trust on the home as security for the loan. Eventually, the note and deed of trust were purchased by defendant and respondent Bankers Trust Company (Bankers).

In June 1995 Dimock failed to make payments on the loan. In January 1996, the trustee under the deed of trust, defendant and respondent Commonwealth Trust Deed Services, Inc. (Commonwealth), recorded a notice of

---

[1] All statutory references are to this code unless otherwise stated.

default. The notice of default was prepared and recorded for Commonwealth by its agent, defendant and respondent T.D. Service Company (TD).

In May 1996 Dimock entered into a forebearance agreement with defendant and respondent Temple Inland Mortgage Corporation (Temple), which was acting on behalf of Bankers. Under the forebearance agreement Bankers agreed it would not go forward with the foreclosure in return for a promise from Dimock to make regular payments on the loan which, over a period of time, would bring the loan current. However, after making the initial payment required under the forebearance agreement, Dimock made no further payments on the loan.

On August 15, 1996, Bankers recorded a substitution of trustee which substituted defendant and respondent Calmco Trustee Services, Inc. (Calmco), as the trustee of record in the place and stead of Commonwealth. The substitution was prepared by TD acting on Bankers's behalf.

Also on August 15, 1996, TD, acting on behalf of Calmco, recorded a notice of default and election to sell. Consistent with statutory requirements, the notice of default stated: "No sale date may be set until three months from the date this notice of default may be recorded."

According to an employee of TD, the recording of the Calmco substitution and the recording of the Calmco notice of default were mistakes. According to the TD employee, at the time these documents were recorded TD did not know that it had previously recorded a notice of default on Commonwealth's behalf and that a foreclosure file already existed with respect to Dimock's home. When a title company advised TD about the earlier Commonwealth notice of default, TD "abandoned" the Calmco file it had created to process the Dimock foreclosure and instead proceeded with the foreclosure using its earlier Commonwealth file.

Because it discovered the error shortly after recording the documents, TD did not send Dimock copies of either the Calmco substitution or the Calmco notice of default. However, other than abandoning its own file on the matter, TD did not record any document which expressly abandoned or otherwise vacated the Calmco substitution or Calmco notice of default.

Dimock did not discover the substitution of Calmco as trustee or the Calmco notice of default until after he initiated these proceedings.

On August 27, 1996, TD, acting on behalf of Commonwealth, recorded a notice of trustee's sale which set September 18, 1996, as the date for a

trustee's sale. By its terms the notice of sale was given by Commmonwealth and stated that Commonwealth would be the seller at the trustee's sale. The notice of sale was both mailed to Dimock and posted on the front door of his home.

On September 18, 1996, TD, again acting on behalf of Commonwealth, conducted the trustee's sale and sold the property to defendant and respondent Emerald Properties LLC (Emerald) for the sum of $98,000. The sale price yielded $9,829.02 in funds in excess of what was needed to discharge Bankers' note and the costs of foreclosure.

On September 23, 1996, Commonwealth gave Emerald a trustee's deed and on October 1, 1996, the deed was recorded.

On September 24, 1996, Emerald initiated an unlawful detainer action against Dimock and obtained a judgment giving it possession of his home.

In response to the unlawful detainer proceedings, Dimock filed the instant action against Bankers, Commonwealth, Calmco and TD, among others. He alleged causes of action for declaratory and injunctive relief, quiet title and damages. He initially argued that he had not been given proper notice of the trustee's sale. During the course of discovery he became aware of the Calmco substitution and argued that in light of it the sale by Commonwealth to Emerald was void.

TD filed an interpleader cross-complaint with respect to the excess funds it was holding by virtue of the trustee sale. TD argued that it did not know what to do with the funds because if Dimock was successful in having the sale to Emerald vacated, the excess funds would belong to Emerald.

The parties filed cross-motions for summary judgment. The trial court granted the defendants' motions and denied Dimock's. Thereafter it entered judgment in favor of the defendants and ordered that TD turn over the excess funds it was holding to Dimock. Dimock filed a timely notice of appeal.

I

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The defendant 'must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial.' "

(*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [55 Cal.Rptr.2d 415].) If the defendant makes such showing, the court must look at the plaintiff's papers to determine whether they "[demonstrate] the existence of a triable, material factual issue." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065 [225 Cal.Rptr. 203].) We review the record de novo. (*Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1365 [59 Cal.Rptr.2d 813].)

II

█ There is no dispute Bankers, by its agent TD, recorded a document which substituted Calmco as trustee under the subject deed of trust. There is nothing on the face of the substitution which indicates it is other than a valid and bona fide substitution. There is also no dispute that the substitution of Calmco was never subject to any further recorded substitution by Bankers. Finally, there is no dispute that the deed conveying the property to Emerald was executed by Commonwealth, not Calmco. Given this record we have no choice but to reverse the trial court's order granting summary judgment in favor of the defendants and direct that the trial court enter a judgment quieting title in favor of Dimock, subject to such encumbrances as existed at the time of the purported sale by Commonwealth.

### A. *Calmco Had the Sole Power to Convey the Property*

Under the unambiguous terms of section 2934a,[2] subdivision (a)(4), the recording of the substitution of trustee transferred to Calmco the exclusive

---

[2]At all pertinent times section 2934a stated: "(a)(1) The trustee under a trust deed upon real property or an estate for years therein given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries under the trust deed, or their successors in interest, and the substitution shall be effective notwithstanding any contrary provision in any trust deed executed on or after January 1, 1968; or (B) the holders of more than 50 percent of the record beneficial interest of a series of notes secured by the same real property or of undivided interests in a note secured by real property equivalent to a series transaction, exclusive of any notes or interests of a licensed real estate broker that is the issuer or servicer of the notes or interests or of any affiliate of that licensed real estate broker.

"(2) A *substitution executed pursuant to subparagraph (B) of paragraph (1) is not effective* unless all the parties signing the substitution sign, under penalty of perjury, a separate written document stating the following:

"(A) The substitution has been signed pursuant to subparagraph (B) of paragraph (1).

"(B) None of the undersigned is a licensed real estate broker or an affiliate of the broker that is the issuer or servicer of the obligation secured by the deed of trust.

"(C) The undersigned together hold more than 50 percent of the record beneficial interest of a series of notes secured by the same real property or of undivided interests in a note secured by real property equivalent to a series transaction.

power to conduct a trustee's sale. This plain reading of the statute is consistent with the law as it existed before the predecessor statute was enacted in 1935 and the power to substitute a trustee depended solely on the express provisions of a deed of trust. (See *Witter v. Bank of Milpitas* (1928) 204 Cal. 570, 577-578 [269 P. 614]; *Pacific S. & L. Co. v. N. American etc. Co.* (1940) 37 Cal.App.2d 307, 309-310 [99 P.2d 355].) " ' "Upon the appointment being made under the power, the new trustee becomes vested, *ipso facto*, with the title to the trust premises and is clothed with the same power as if he had been originally named . . . ." ' " (*Witter v. Bank of Milpitas, supra,* 204 Cal. at p. 578.)

---

"(D) Notice of the substitution was sent by certified mail, postage prepaid, with return receipt requested to each holder of an interest in the obligation secured by the deed of trust who has not joined in the execution of the substitution or the separate document.

"The separate document shall be attached to the substitution and be recorded in the office of the county recorder of each county in which the real property described in the deed of trust is located. Once the document required by this paragraph is recorded, it shall constitute conclusive evidence of compliance with the requirements of this paragraph in favor of substituted trustees acting pursuant to this section, subsequent assignees of the obligation secured by the deed of trust, and subsequent bona fide purchasers or encumbrancers for value of the real property described therein.

"(3) For purposes of this section, 'affiliate of the licensed real estate broker' includes any person as defined in Section 25013 of the Corporations Code that is controlled by, or is under common control with, or who controls, a licensed real estate broker. 'Control' means the possession, direct or indirect, of the power to direct or cause the direction of management and policies.

"(4) The substitution shall contain the date of recordation of the trust deed, the name of the trustor, the book and page or instrument number where the trust deed is recorded, and the name of the new trustee. From the time the substitution is filed for record, the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust. A substitution may be accomplished, with respect to multiple deeds of trust which are recorded in the same county in which the substitution is being recorded and which all have the same trustee and beneficiary or beneficiaries, by recording a single document, complying with the requirements of this section, substituting trustees for all those deeds of trust.

"(b) If the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries shall cause a copy of the substitution to be mailed, prior to the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision.

"(c) Notwithstanding any provision of this section or any provision in any deed of trust, unless a new notice of sale containing the name, street address, and telephone number of the substituted trustee is given pursuant to Section 2924f, any sale conducted by the substituted trustee shall be void.

"(d) This section shall remain in effect only until January 1, 1998, and shall have no force or effect after that date, unless a later enacted statute, which is enacted before January 1, 1998, deletes or extends that date."

Our reading of the statute is also consistent with practical necessity: there simply cannot be at any given time more than one person with the power to conduct a sale under a deed of trust. We would create inestimable levels of confusion, chaos and litigation were we to permit a beneficiary to appoint multiple trustees, each one retaining the power to sell a borrower's property.

The defendants' suggestion that TD, by simply "abandoning" its internal Calmco foreclosure file, could thereby effectively reinstate Commonwealth as trustee is similarly unsupported by any authority and is almost as impractical as the notion there could be multiple trustees with the power to convey. As Dimock points out, section 2934a only permits a substitution by way of a recorded document. The terms of the deed of trust itself do not provide any alternative means of making a substitution.[3] As a practical matter, were the validity of recorded substitutions subject to the undisclosed, undocumented and subjective decisions of agents of the beneficiary, the ability of successor trustees to provide marketable title would be severely hampered.[4]

In sum then, on this record Commonwealth had no power to convey Dimock's property.

### B. *The Commonwealth Conveyance to Emerald Was Void*

As Dimock points out, because Commonwealth had no power to convey his property its deed to Emerald was void as opposed to merely voidable. That is, the Commonwealth deed was a complete nullity with no force or effect as opposed to one which may be set aside but only through the intervention of equity. (See *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358-1359 [233 Cal.Rptr. 923].)

The void nature of the Commonwealth deed derives in some measure from the fact that our courts have adopted a title theory of deeds of trust.

---

[3]The deed of trust states: "Lender may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named in the Security Instrument or acting thereunder. Such instrument shall be executed and acknowledged by Lender and recorded in the office of the recorder of the county or counties where the Property is situated and shall be conclusive proof of the proper substitution of such successor Trustee or Trustees. Such successor Trustee or Trustees shall, without conveyance from the predecessor Trustee, succeed to all its title, estate, rights, powers and duties. The procedure herein provided for substitution of Trustee shall not be exclusive of other provisions for substitution permitted by law."

[4]Other than recording a further substitution, the only means by which Commonwealth might arguably have been empowered to convey Dimock's property would have been with Dimock's consent. (See *Pacific S. & L. Co. v. N. American etc. Co.*, *supra*, 37 Cal.App.2d at pp. 310-311.) However, because Dimock was not even aware of the substitution, there is no evidence in the record which would establish his consent to its abandonment.

(*Bank of Italy etc. Assn. v. Bentley* (1933) 217 Cal. 644, 655 [20 P.2d 940].) ■ "[A] deed of trust differs from a mortgage in that title passes to the trustee in case of a deed of trust, while, in the case of a mortgage, the mortgagor retains title; that the statute of limitations never runs against the power of sale in a deed of trust, while it does run against a mortgage; and that a mortgagor has a statutory right of redemption after foreclosure [citation], while no such right exists under a deed of trust." (*Ibid.*) ■ Given that title to property is held by the trustee under a deed of trust, it is difficult to accept the notion that one who no longer has title could nonetheless convey effective title. Admittedly, however, the title theory of deeds of trusts does not control their treatment in all circumstances. (*Id.* at pp. 655-656.) In any number of cases the title theory has been ignored in order to afford borrowers with the protection provided to mortgagors. (*Ibid.*)

The more fundamental difficulty we have with the defendants' contention that the Commonwealth deed was only voidable and not void, is that the particular circumstances which have permitted other courts to save defective foreclosure sales as voidable rather than void, do not exist here. In *Little v. CFS Service Corp., supra,* 188 Cal.App.3d at pages 1358-1359, the court reviewed the California cases which considered whether defects in notice made a foreclosure sale void or voidable. The court found: "Although the extent of the defect is not determinative, what seems to be determinative is the existence and effect of a conclusive presumption of regularity of the sale. A deed of trust, which binds the trustor, may direct the trustee to include in the deed to the property recitals that notice was given as required under the deed of trust and state that such recitals shall be conclusive proof of the truthfulness and regularity thereof." (*Id.* at p. 1359.) Where no such recitals as to the regularity of a sale appear in a deed and there was a defect in the notice to the trustor, the deed has been found void. (*Ibid.*) Where such recitals appear on the face of a deed but the deed also sets forth facts which are inconsistent with the recital of regularity, the deed has been found void on the basis that the deed showed that the recitals were not valid. (*Ibid.*, citing *Holland v. Pendleton Mtge. Co.* (1943) 61 Cal.App.2d 570, 576-577 [143 P.2d 493].)

Only where recitals of regularity appear in the deed and no contrary recitals are made have notice defects been found to make a deed voidable, rather than void. (*Little v. CFS Service Corp., supra,* 188 Cal.App.3d at p. 1359.) In such instances a trustor then bears the burden of showing that there are grounds for equitable relief from the deed, such as fraud or that the buyer was not a bona fide purchaser for value, and that there were also defects in notice. (*Ibid.*)

In addition, in the context of overcoming a voidable sale, the debtor must tender any amounts due under the deed of trust. (See *Karlsen v. American*

*Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 [92 Cal.Rptr. 851]; *Py v. Pleitner* (1945) 70 Cal.App.2d 576, 582 [161 P.2d 393].) This requirement is based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose. (*Karlsen v. American Sav. & Loan Assn., supra,* 15 Cal.app.3d at p. 118.)

Here, although the deed of trust Dimock executed states that a recital in a trustee's deed "of any matters of fact shall be conclusive proof of the truthfulness thereof," the deed Commonwealth gave Emerald following the foreclosure sale contains no statement that Commonwealth's power to act as trustee had survived any recorded substitution. Rather, by its terms the Commonwealth deed merely conveyed to Emerald "such interest as Trustee has in" Dimock's property.

The only factual recitals in the deed are to Commonwealth's compliance with the requirements of section 2924 et seq. and the deed of trust. Section 2924 et seq. sets forth the notice which must be provided to the debtor and junior lienholders and the means by which the sale must be conducted; the deed of trust sets forth similar requirements with respect to notice and conduct of the sale. These factual recitals, relating to the notice given Dimock and the conduct of the sale, cannot be interpreted as making any representation as to whether a conflicting substitution of trustee had been recorded.

Because there was no recital in the Commonwealth deed to Emerald which undermined the Calmco substitution, the deed to Emerald did not create any conclusive presumption that Commonwealth continued to act as trustee. Accordingly, in attacking the Commonwealth deed Dimock was not required to rely upon equity in setting aside a merely voidable deed. (*Little v. CFS Service Corp., supra,* 188 Cal.App.3d at p. 1359.) Rather, he could rely on the face of the record to show that the Commonwealth deed was void. (*Ibid.*)

Because Dimock was not required to rely upon equity in attacking the deed, he was not required to meet any of the burdens imposed when, as a matter of equity, a party wishes to set aside a voidable deed. (See *Little v. CFS Service Corp., supra,* 188 Cal.App.3d at p. 1359.) In particular, contrary to the defendants' argument, he was not required to tender any of the amounts due under the note.

## DISPOSITION

The summary judgments entered in favor of the defendants are reversed and the trial court is instructed to enter judgment quieting title in favor of

Dimock subject to such encumbrances as existed at the time of the foreclosure sale. The trial court is further instructed to conduct such additional proceedings as are consistent with the views expressed herein and which, in its discretion, the trial court believes are necessary.

Appellant to recover his costs of appeal.

McDonald, J., and O'Rourke, J., concurred.